LLOYD-MCALPINE LOGGING COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN and others, Respondents.

*December 11, 1925—January 12, 1926.*

*Workmen's compensation: Dependency of children on father: Presumptions: Mother living with another man: Duty of father to support as sole basis of dependency: Evidence: Sufficiency: Hearsay.*

1. To warrant an award of compensation by the industrial commission under sub. (3) (c), sec. 102.11, Stats., to the children of an employee who sustained injuries resulting in his death while in the service of the plaintiff logging company, it must be shown that the children were living with the deceased at the time of his death and had no surviving dependent parent.    p. 645.
2. The undivorced wife of deceased, who had left him and for four years had been living with another man, is not a dependent parent.    p. 645.
3. Since the Equal Rights Law (ch. 529, Laws of 1921), in the absence of proceedings having been taken under sec. 3964, Stats., as amended in 1921, to deprive either parent of the right to the custody of the children, there is no presumption that they were living with their father.    p. 646.
4. The legal liability of a parent to support his children is not alone a sufficient basis for awarding compensation to the children under sub. (3) (c), sec. 102.11, Stats.    p. 646.
5. The fact that the undivorced wife of the deceased was living with another man does not show that the wife was deprived of the care of the children.    p. 647.
6. Though liberality must be indulged by the courts in reviewing the findings of the industrial commission, there must be evidence in the record to support the findings, want of which makes such findings invalid as in excess of the powers of the commission.    p. 647.
7. In an action to vacate the award, the evidence is *held* not to justify a finding that the children were living with the deceased at the time of his death.    p. 645.
8. Hearsay evidence cannot properly be made the basis of a finding by the commission.    p. 648.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge.    *Reversed.*

September 7, 1923, one Paul Whitefish, an Indian of the Menominee tribe then about fifty, met his death in the course of his employment by the plaintiff, *Lloyd-McAlpine Logging Company,* both subject to the compensation act.

The defendants *Martha* and *Isabella* were his sole surviving children, aged then about nineteen and fifteen respectively. The defendant mother of these girls, also an Indian, a Pottawatomie, had left the deceased, though not divorced, in about 1919, and thereafter had lived with another Indian, also not a Menominee, Moshoquitt Cheequasit. The two girls were both mentally incapacitated from ever being of earning ability, and for a long time had been kept, fed, and clothed each school year in the school maintained under the direction of the United States government on the reservation for the Menominee Indians in this state and out of the tribal or community funds, and according to the testimony of Mr. Allen, the superintendent of the United States Indian Agency, the deceased Paul, also known as Petetah Whitefish, and the two daughters had each an undivided interest, in common with about 1,838 others, in such tribal trust fund, amounting to $2,500,000, as well as in other property, such respective interests, however, subject to being cut off by death.

The deceased at times, as in this instance, was away from the reservation and worked for others, making no accounting of earnings to the agency. At the times he returned he appears to have lived in the house on the agency occupied by his parents.

The deceased took the girls away from the school each June for the vacation and either returned them or they were brought back by the officials each September.

Mr. Allen, who applied to the *Industrial Commission* for an award on behalf of these children, testified on direct examination that the deceased fed and clothed the children during the vacations and that they then lived with deceased, and that the girls came back in the fall with different cloth-

ing than that furnished during school times. He also testified that he visited them many times during the summers and found them with the aforesaid grandparents, but that on his only visit during the summer preceding the death the deceased was then away. On his cross-examination it appeared that he had no information as to what Paul Whitefish did with his earnings; had no personal knowledge of his buying clothes; or of their value; or of the value of the maintenance, if any; or of the deceased giving the children any money; also that the grandparents, about eighty years old, earned a little or received rations from the government, and that the grandmother had received funds from time to time and used for the family's support from a small inheritance held for her by the government.

The mother of the children, who was, apparently, also an applicant for an award, testified that she took care of these children and away from the reservation during the summers except for short visits to the father. That he gave them some clothing, and in the last fall had given her, the mother, $5 realized by him from a mortgage on his horse, to spend and spent for clothing for the children.

It also appeared that the mother caused the difficulties about getting the children back to the school on several occasions.

No formal denial of the application of the mother for an award as widow appears in the record.

The *Industrial Commission* made an award to the general guardian of the two daughters of $3,302.50, one half to each. This action was brought to review such award. The court below confirmed it except requiring the payment to be made to the treasury of the United States to be held and disbursed as directed by federal Revised Statutes, sec. 2108. From such judgment this appeal is taken.

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *Mortimer Levitan* and *Suel O. Arnold,* assistant attorneys general, and oral argument by *Mr. Arnold.*

ESCHWEILER, J.   This award was made under the provisions of sub. (3) (c), sec. 102.11, Stats., defining those conclusively presumed to be solely and wholly dependent for support upon a deceased employee.   To support it in favor of these two children under the statute there must be in the record sufficient legal evidence to warrant the conclusion that they were living with Paul Whitefish at the time of his death, and further that there was no surviving dependent parent.

There is presented no difficulty in regard to the latter. The surviving parent, the mother, undivorced, had left the deceased and for four years had been living with another Indian and away from the reservation.   Clearly, though still the wife of deceased and a surviving parent, she was not living with the employee at the time of his death, as is expressly required by sub. (3) (a) of the same statute, and therefore not a dependent parent.

We are of the opinion that the evidence does not justify the finding that these two children were living with the deceased at the time of his death so as to bring them within the statute.

It is undisputed that for years the expense of maintaining these children, including their food and clothing at school from early in September to early in June of each year, was borne by the community or tribal fund.   The only cash contribution shown to have been made by the deceased was the sum of $5 which he gave to the mother to buy clothes for them.   Her testimony was to the effect that she, not he, took care of them during the summers except for short visits to him, and the only visit to the father during the summer preceding the death was of a little over a week

and just before the fall commencement of school. The facts here do not compare with the situation shown in the case relied upon by respondents of *Milwaukee W. F. Co. v. Industrial Comm.* 179 Wis. 223, 190 N. W. 439, where, though separated by great distance, there was a showing of sums of money being sent for the support and care.

In this case no judicial proceedings had been taken under sec. 3964 (now sec. 319.03), Stats., so as to deprive either parent of the right which each had under the statute to the custody of the children. Under that statute as amended by ch. 147, Laws of 1921, which took away the prior existing preference of the father as guardian, as well as by sub. (1), sec. 6.015 (the Equal Rights Law: ch. 529, Laws of 1921), women are declared to have the same rights and privileges as men in the care and custody of children. Therefore there could be here, since the enactment in 1921 of the above mentioned chapters, no presumption, as might have been indulged in before that time, that there was here a living with the father as the parent having a prior right to the custody. The mere legal liability of a parent to support a child is not, in the absence of express statute, it would seem from the authorities, sufficient basis for awarding such compensation. *New Monckton Collieries v. Keeling,* 6 Neg. & Comp. Cas. Ann. p. 240, and note. The subject is also discussed in *Lawrence v. Lake Superior T. & T. R. Co.* 3 Wis. Ind. Comm. Rep. 41, cited in the above at p. 256.

The Massachusetts statute on this subject was worded like ours, and after an amendment so as to include a wife living apart for justifiable cause or who had been deserted by the husband, still it was held that a son deserted by and living apart from the father for justifiable cause was not solely and wholly dependent. *Moran's Case,* 234 Mass. 152, 125 N. E. 157. Then by further amendment a child was made conclusively wholly dependent upon a parent "le-

gally bound to support although living apart from such child." But in cases of divorce and separation there were still difficulties, as shown in *Gillander's Case,* 243 Mass. 5, 136 N. E. 646; *Miller's Case,* 244 Mass. 281, 138 N. E. 254. A similar provision as to justifiable separation by the wife is in the Michigan statute. *Martilla v. Quincy M. Co.* 221 Mich. 525, 191 N. W. 193, 30 A. L. R. 1249, with general note on the subject at p. 1253.

Although undivorced and living with Cheequasit, the wife and mother was still to be recognized as having rights in many respects. She still might assert her right to dower (*Davis v. Estate of Davis,* 167 Wis. 328, 167 N. W. 819) ; and was not necessarily to be deprived of the care of her children (*Jensen v. Jensen,* 168 Wis. 502, 505, 170 N. W. 735).

Some general language of Superintendent Allen on his direct examination might seem to warrant the conclusion reached by the *Industrial Commission* and the court below. The cross-examination, however, and his entire testimony shows that such expressions were mere conclusions of the witness with no other support than pure hearsay. It has been consistently held that though great liberality must be indulged in by the courts in reviewing the findings of the *Industrial Commission,* nevertheless that there must be evidence in the record to support the findings, want of which evidence makes such findings invalid because in excess of the *Commission's* powers. *International H. Co. v. Industrial Comm.* 157 Wis. 167, 175, 147 N. W. 53; *Milwaukee v. Industrial Comm.* 160 Wis. 238, 243, 151 N. W. 247; *Voelz v. Industrial Comm.* 161 Wis. 240, 242, 152 N. W. 830. Mere conjecture cannot be the basis of a finding of the *Commission* any more than of a finding by a court (*Lezala v. Jazek,* 170 Wis. 532, 536, 175 N. W. 87, 176 N. W. 238) ; and a mere evidentiary presumption as to continuance of life being held insufficient in *Milwaukee*

*W. F. Co. v. Industrial Comm.* 179 Wis. 223, 231, 190 N. W. 439. Hearsay was recognized as improper and insufficient in *A. Breslauer Co. v. Industrial Comm.* 167 Wis. 202, 205, 167 N. W. 256. So far, therefore, as the testimony of Superintendent Allen was of the nature of hearsay, it cannot be the basis of a finding. Respondents cite *Shell Co. v. Industrial Acc. Comm.* 36 Cal. App. 463, 172 Pac. 611, and *Perry v. Industrial Acc. Comm.* 180 Cal. 497, 181 Pac. 788, upholding the admission of hearsay testimony. These decisions, however, were under statutes expressly authorizing such departure from the ordinary rules of procedure.

We do not determine other questions presented and argued, having disposed of this case upon the one ground.

*By the Court.*—Judgment reversed, with directions to dismiss the proceeding.