### Alice Shank, Appellant, v. Modern Woodmen of America, Appellee.

### Gen. No. 6,594.

1. PLEADING, § 432*—*what is effect of videlicet on proof of death.* In an action on a mutual benefit certificate based on the presumption of death after 7 years' absence, the date of death being laid under a *videlicet,* permits proof of death at any time.

2. DEATH, § 2*—*when presumed.* The presumption of death arising from 7 years' absence is sufficient to support recovery on a mutual benefit certificate.

3. INSTRUCTIONS, § 118*—*when instruction on presumption of death erroneous because not based on evidence.* In an action on a mutual benefit certificate based on the presumption of death after 7 years' absence, it is erroneous to instruct that the presumption of death does not arise if there were reasons why the insurer did not want his relatives to know his whereabouts, where there is no substantial evidence in support of such theory.

4. DEATH, § 2*—*when erroneous to require jury to find whether person is in fact dead.* In an action on a mutual benefit certificate based on the presumption of death after 7 years' absence, it is erroneous to instruct the jury to determine whether the insurer "was in fact dead."

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

5. Courts, § 152*—*when decision relating to instruction not authority.* A decision affirming a judgment for the plaintiff is not authority in support of an instruction given at the request of the defendant and referred to in the opinion merely to show how favorable the instructions were to the defendant.

6. Death—*when instruction relating to presumption of is erroneous.* In an action on a benefit certificate based on the presumption of death after 7 years' absence, it is erroneous to instruct that the mere fact of the disappearance of the insured had nothing to do with the question.

7. Trial, § 270*—*requisites of special interrogatories.* Special interrogatories must be based on the evidence and relate to a material fact.

Appeal from the Circuit Court of Stephenson county; the Hon. Richard S. Farrand, Judge, presiding. Heard in this court at the October term, 1918. Reversed and remanded. Opinion filed February 8, 1919.

A. J. Clarity and R. R. Tiffany, for appellant.

Truman Plantz, E. D. Reynolds and George G. Perrin, for appellee.

Mr. Presiding Justice Dibell delivered the opinion of the court.

In May, 1900, the Modern Woodmen of America, a fraternal beneficiary society, issued a benefit certificate upon the life of Isaac I. Shank, payable to his wife, Alice Shank, upon his death, while a member of said society in good standing. On May 30, 1908, he disappeared and has never since returned to his home. His wife paid the dues upon said certificate until the expiration of 7 years from the time of his disappearance, and on November 22, 1916, brought this suit on said certificate, the cause of action being based on the claim that, because of his absence for 7 years, he was then legally presumed to be dead. A declaration of three counts and two additional counts was filed. The first three counts allege his death ''on, to-wit, the 30th

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

day of May, A. D. 1908," but the use of the *videlicet* in that allegation permitted proof by her of his death at any time. (*Rose v. Mutual Life Ins. Co.*, 144 Ill. App. 434.) The additional counts alleged his death on the 31st day of May, A. D. 1915, that date also being stated under a *videlicet.* Defendant filed numerous pleas. To some of these demurrers were sustained, to others there were replications and issues joined thereon. The pleadings need not be stated further, as no questions are raised thereon. There was a jury trial and a verdict for defendant. A motion by plaintiff for a new trial was denied. Defendant had a judgment in bar, and plaintiff appeals.

The principles upon which plaintiff's right to recover depend are established for this State in a harmonious line of decisions: *Whiting v. Nicoll*, 46 Ill. 230; *Johnson v. Johnson*, 114 Ill. 611; *Reedy v. Millizen*, 155 Ill. 636; *Hitz v. Ahlgren*, 170 Ill. 60; *Policemen's Benev. Ass'n v. Ryce*, 213 Ill. 9; *Kennedy v. Modern Woodmen of America*, 243 Ill. 560; *Donovan v. Major*, 253 Ill. 179; *Stevenson v. Montgomery*, 263 Ill. 93; *Apitz v. Supreme Lodge Knights and Ladies of Honor*, 274 Ill. 196. Those principles are thus stated in *Reedy v. Millizen, supra:*

"Absence for 7 years without the whereabouts being known, and without having been heard from during that period, raises, at the expiration of this time, the presumption of death. (Citing authorities.) When, however, a thing is shown to exist, its continuance is presumed until the contrary is shown or a conflicting presumption arises. Hence, unless it be shown that death occurred prior to the expiration of the 7 years' absence, or some conflicting presumption arises from the facts proved which would overcome the presumption of the continuance of life, the presumption of life would obtain until the full expiration of the period, when the contrary presumption of death, from the continued absence, would arise. While, therefore, it is true that there is no presumption that death occurred at any particular time within the 7 years, it is also true

that, in the absence of contravening facts or controlling presumptions, it will be presumed that life continued during the entire period.''

Inasmuch as we conclude that the cause must be submitted to another jury, we deem it unnecessary to give the details of the evidence, except to say that Shank lived at Lena, Illinois, and was in the business of buying live stock in the surrounding neighborhoods and shipping them to market in railroad cars; that he had a wife and a daughter, and an aged father, to each of whom he was much attached; that he had some debts but also had assets, and also expectations to accrue on the death of his father, and was not in financial difficulty nor being harassed by his creditors; that he was in poor health because of some heart trouble from which he suffered severely at times; that he left his home on May 30, 1908, to get a shipment of cattle, expecting to return home the following week; that his course of business caused him generally to send home his old clothes in a valise after he had his cattle loaded; that he did send home such valise and old clothes at this time and with them a letter to his wife, in which he said that he was going to tie a stone around his body and drown himself in the Mississippi River that evening; that he changed clothes in Savanna, where this letter was dated, between box cars in the railroad yards; that he bought a railroad ticket for Omaha, which ticket was used; and that he never afterwards returned to his home, and was never afterwards heard from except through hearsay rumor that a man, not a witness, had seen him in Omaha soon afterwards. His family caused inquiries to be made in a search for him. He belonged to two societies besides the Modern Woodmen, and their officers sought to find traces of him. In this state of the evidence the court, at the request of the defendant, gave the jury the fifth instruction, which was to the effect that if there were reasons why Shank did not want his relatives and friends to know of his whereabouts, then the presumption of his death

from his absence for 7 years or more would not exist. We are of opinion that this instruction was erroneous. The reasons referred to might be very slight. They might be overcome by other considerations of his love and affection for his family, or his prospect of inheriting from his aged father, and otherwise. There was no substantial evidence of any such reasons. All that can be said is that some persons might suspect the existence of some such reason from some of the evidence in the case. No doubt, if there were such reasons of a substantial character shown in the evidence, that would be a matter to be considered by the jury in determining whether his death was to be presumed from his absence for 7 years, but the court could not properly say to the jury that by such evidence the presumption of death was overcome. The court gave, at the request of the defendant, the sixth instruction, which required the jury to determine whether said Shank "was *in fact* dead" at the commencement of this suit. The jury would naturally infer from this instruction that some one must be produced who could swear positively that he had seen Shank die, or had seen his dead body. This instruction practically excluded the right of plaintiff to recover upon the presumption of death from his absence of 7 years. It is said that this instruction is approved in *Policemen's Benev. Ass'n v. Ryce, supra.* The instruction in that case was given at the request of the defendant, who was defeated, and no error was assigned upon that instruction, but the court there set out three of the instructions which had been given at the request of the defendant in order to show how favorable to defendant the instructions had been. The judgment there was affirmed. As the correctness of that instruction was not raised in that case, it is not an authority to support the instruction. By instruction No. 7, given at the request of defendant, the jury were told, among other things, that the mere fact of the disappearance of Shank had nothing to do with the question whether or

not defendant was liable. The disappearance of Shank was one of the necessary links in plaintiff's case, and this instruction erroneously told the jury that it had nothing to do with the issues. Some things in these instructions are supposed to be supported by *Lichtenhan v. Prudential Ins. Co. of America,* 191 Ill. App. 412. In that case the defendant was the appellant, and was defeated in the Appellate Court, and the substance of the charge of the trial court favorable to the defendant was stated, but an approval of that part of the charge does not follow from that decision. At the request of defendant the court submitted three special interrogatories, to be answered by the jury. The first was whether Shank committed suicide at Savanna on May 30, 1908, by jumping into the Mississippi River. The second was whether Shank died within 18 months from May 30, 1908; and the third, whether Shank was living on September 1, 1908. There was no issue and no evidence which justified the second interrogatory. We think the third interrogatory also was improper. If it was proper to ask whether he was living on that date it would have been equally proper to present such an interrogatory as to each date from May 30, 1908, until after the expiration of the 7 years. The judgment is reversed and the cause remanded.

*Reversed and remanded.*